UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| EMA GARP FUND, L.P. and LAWRENCE LEPARD, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| BANRO CORPORATION and JOHN A. CLARKE, | ) |
| | ) |
| Defendants. | ) |

Case No.: 1:18-cv-01986-KPF

_____

## PLAINTIFFS' CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

**KALBERER LLP**
Kurt T. Kalberer II
7 World Trade Center
250 Greenwich Street, 46th Floor
New York, NY 10007
(212) 266-0044 (Telephone)
(212) 513-7052 (Facsimile)
E-Mail: kkalberer@kalbererlaw.com

*Counsel for Plaintiffs EMA Garp Fund, L.P. and Lawrence Lepard*

## <u>TABLE OF CONTENTS</u>

**Page**

**PRELIMINARY STATEMENT**……………………………………………… 5

**STATEMENT OF FACTS**…………………………………………………… 9

**LEGAL STANDARD**………………………………………………………… 12

**ARGUMENT**………………………………………………………………….. 13

    **A.   This Action was Properly Filed in this Court**…………………………………13

    **B.   International Comity does not Support, Much Less Require, Dismissal
of this Action**………………………………………………………………..15

        *1.   There is no Parallel Proceeding or Claim Presented in the CCAA
Proceeding*…………………………………………………………………15

        *2.   Defendants have Failed to Establish Exceptional Circumstances*……………18

        *3.   Plaintiffs will Suffer Extreme Prejudice if the Motion is Granted*……………19

        *4.   Claims Against Clarke Cannot be Dismissed*…………………………………20

        *5.   The Balance of Equity Weighs in Favor of Plaintiffs*…………………………23

**CONCLUSION**………………………………………………………………25

## TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Alemite Mfg. Corp. v. Staff,*
     42 F.2d 832 (2d Cir. 1930)……………………………………………… 13

*Allstate Life Ins. Co. v. Linter Group, Ltd.*,
     994 F.2d 996 (2d Cir. 1993)……………………………………………….. 18

*Belinzoni v. Seland*,
     512.N.Y.2d 846 (2d Dep't 1987)…………………………………………23

*C.D.S., Inc. v. Zetler*,
     198 F. Supp. 3d 323 (S.D.N.Y. 2016)…………………………………24

*Colo. River Water Conservation Dist. v. United States*,
     424 U.S. 800 (1976)……………………………………………………6, 15

*Duff & Phelps, LLC v. Vitro S.A.B. de C.V.*,
     18 F. Supp. 3d 375 (S.D.N.Y. 2014)…………………………………..13

*Fotochrome, Inc. v. Copal Co.*,
     517 F.2d 512 (2d Cir. 1975)…………………………………………7, 13

*Hilton v. Guyot*,
     159 U.S. 113 (1895)……………………………………………………8, 19

*Int'l Ass'n of Machinists & Aero. Workers v. Varig, S.A.*,
     302 Fed. Appx. 10 (2nd Cir. 2008)……………………………………17

*In re Kingate Mgmt. Ltd. Litig.*,
     2016 U.S. Dist. LEXIS 129882 (S.D.N.Y. 2016)……………………………6, 19

*In re Kasl,*
     No. SV-05-15311MT, 2009 Bankr. LEXIS 2351
     (C.D. Cal. March 20, 2009)…………………………………………..14

*JP Morgan Chase Bank*,
     412 F.3d 418 (2d Cir. 2005)…………………………………………..15, 17, 23

*Kingsway Fin. Servs. v. Pricewaterhouse-Coopers, LLP*,
     420 F. Supp. 2d 228 (S.D.N.Y. 2005)…………………………………………..13

*Kitaru Innovations Inc. v. Chandaria*,
    698 F. Supp. 2d 386 (S.D.N.Y. 2010)…………………………...……...……..…..24

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)…………………………………………...……...……..…..15

*Lopresti v. Terwilliger*,
    126 F.3d 34 (2d Cir. 1997)……………………………….……...……..……22

*In re Madoff*,
    2016 U.S. Dist. LEXIS 4067 (S.D.N.Y. November 21, 2016)………..……...……...13

*Maersk, Inc. v. Neewra, Inc.*,
    2010 U.S. Dist. LEXIS 69863 (S.D.N.Y. July 9, 2010)……………….……...……..13

*Natural Res. Def. Council v. Johnson*,
    461 F.3d 164 (2d Cir. 2006)………………………………………….……...……12

*Oui Financing LLC v. Dellar*,
    No. 12 Civ. 7744(RA), 2013 WL 556873 (S.D.N.Y. Oct. 9, 2013)…………..……22

*People v. Apple Health and Sports Club, Ltd., Inc.*,
    613 N.Y.S.2d 868 (1st Dep't 1994)……………………………….……...…..22

*Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*,
    109 F.3d 850 (2d Cir. 1997)……………………………………………15, 17, 23

*Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc.*,
    466 F.3d 88 (2d Cir. 2006)……………………………………………6, 8, 15-16, 18

*Schneider Nat'l Carriers, Inc. v. Carr*,
    903 F.2d 1154 (7th Cir. 1990)……………………………………………….……16

*Turner Entertainment Co. v. Degeto Film GmbH*,
    25 F.3d 1512 (11th Cir. 1994)…………………………………………..8, 19, 20

Plaintiffs, EMA GARP Fund, L.P. (the "Fund") and Lawrence Lepard ("Lepard") (collectively the "Plaintiffs"), by and through their undersigned attorneys, hereby submit their memorandum of law in opposition to Defendants, Banro Corporation ("Banro" or the "Company") and John A. Clarke (collectively the "Defendants"), Motion to Dismiss (the "Motion").

## I.    PRELIMINARY STATEMENT

Defendants' Motion is replete with mischaracterization of the applicable law and misstatements of the material facts germane to this dispute and should be denied under controlling authority from the US Supreme Court, as well as the Second Circuit.  Defendants' Motion entirely ignores the fact that <u>there is no parallel proceeding</u> for the claims asserted in this action, let alone <u>exceptional circumstances</u>, warranting dismissal in favor of the CCAA Proceeding involving the Company's pre-packaged restructuring plan.  Indeed, it is undisputed that no claims concerning the conduct alleged in this action have been brought – or could be brought – in the CCAA Proceeding.  Moreover, Defendant Clarke is not even a party to any proceeding in Canada, let alone subject to parallel claims.  As set forth below, this Motion is not a request by the court Monitor in Canada to allow the claims asserted herein to be adjudicated in Canada, but rather is an audacious request by the debtor itself and its former CEO to have Plaintiffs' claims extinguished altogether.  Defendants' Motion should readily be denied.

More specifically, Defendants' Motion does not ask this Court to recognize any order or ruling from Banro's CCAA Proceeding in Canada, but rather seeks to have this Court divest its jurisdiction over this action in favor of a purported parallel proceeding in Canada.  Tellingly, Defendants fail to even articulate the controlling legal standard for such relief.  The Second Circuit has held that "[t]he task of a district court evaluating a request for dismissal based on a parallel foreign proceeding is not to articulate a justification for the exercise of jurisdiction, but rather to

determine whether exceptional circumstances exist that justify the surrender of that jurisdiction." Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc., 466 F.3d 88, 93 (2d Cir. 2006). In such circumstances, the Supreme Court has counseled that district courts have a "virtually unflagging obligation" to exercise jurisdiction. Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). Even in the context of a foreign insolvency proceeding, a party must demonstrate exceptional circumstances. See In re Kingate Mgmt. Ltd. Litig., 2016 U.S. Dist. LEXIS 129882, *119 (S.D.N.Y. 2016) (denying motion to dismiss on intentional comity grounds because "it is not clear that the normal justification for deferring to foreign bankruptcy proceedings, to allow equitable and orderly distribution of a debtor's property, would apply under these circumstances.")

The Company, however, has already ensured – without any participation by its former CEO Defendant Clarke or Plaintiffs – that no parallel proceeding exists at present and that Plaintiffs' claim cannot and will not be adjudicated on the merits in any Canadian proceeding. Having foreclosed any opportunity for Plaintiffs to have their claims adjudicated on the merits, Defendants' request to dismiss in favor of a nonexistent foreign proceedings should be rejected.

Dismissal is particularly inappropriate for Clarke, who is neither a party to any proceeding in Canada nor has he appeared in any proceeding in Canada. No claim has been asserted by or against Defendant Clarke in Canada. Defendant Clarke is a UK citizen and former employee of the Company. The Court overseeing Banro's CCAA Proceeding in Canada lacks jurisdiction over direct claims by Plaintiffs against Defendant Clarke. Plaintiffs' allegations against Defendant Clarke involve fraud upon the Plaintiffs occurring in the US, not Canada and not the UK. It is well-settled that fraud is not within the scope of one's employment and that Defendant Clarke is personally liable for his fraudulent misconduct. In March of 2018, Clarke was terminated as the

Company's CEO, likely because of the conduct alleged in this action. Logic and reason (and the law) dictate that Defendant Clarke cannot incite international comity to dismiss the claims against in him in favor of litigation in Canada – a forum were none of the parties reside, the conduct did not occur and law is not at issue. As a former employee and UK citizen, with no connection to any proceedings in Canada, there is no basis to dismiss any claims against Defendant Clarke.

Defendants argue the glaring deficiency with their Motion should be overlooked because Plaintiffs filed this action "in violation of a stay order" to "end-run" a claims procedure. However, the stay order does not apply to Plaintiffs, as the CCAA Proceedings do not have personal jurisdiction over the Plaintiffs. See Fotochrome, Inc. v. Copal Co., 517 F.2d 512, 516-17 (2d Cir. 1975) (bankruptcy court stay order does not operate against party if court lacks personal jurisdiction over that party). Defendants' Motion fails to even address – much less meet their burden – of showing how they contend Plaintiffs are subject to orders from the Canadian court – a court which has no personal jurisdiction over Plaintiffs. Having no personal jurisdiction over the Plaintiffs, and there existing no parallel proceeding in Canada concerning their claims, the Plaintiffs' knowledge of, or failure to comply with, orders issued in the CCAA Proceeding is entirely irrelevant to the Motion before the Court.

In addition, the only reason Plaintiffs are now barred for relief is Defendants' actions in response to the filing of this action. Indeed, at the time of the filing of this action, Banro's restructuring plan made no mention of Plaintiffs or their claims. It would seem axiomatic that Defendants cannot use actions it took against Plaintiffs in Canada after the filing of this action as grounds for justifying the dismissal of Plaintiffs' original claims in this action.

Because there is no parallel proceeding of Plaintiffs' claims, or even an avenue for Plaintiffs to present such claims, Defendants' Motion is procedurally defective and replete with

case law addressing the wrong legal standard.  Indeed, what Defendants appear to seek in substance is the recognition of the Sanction Order they obtained in response to this action extinguishing Plaintiffs' claims.  However, that is not the Motion before the Court.

Defendants' Motion seemingly invites the Court to ignore the obvious deficiency with their Motion and commit reversable error by dismissing an entire action against both Defendants upon the showing of the mere existence of Banro's CCAA Proceeding.  Even if the CCAA Proceeding did constitute a parallel proceeding - it does not - the Second Circuit has made abundantly clear that the mere existence of a foreign proceeding "by itself, does not justify the dismissal of a case on grounds of international comity abstention."  Royal & Sun Alliance Ins. Co., 466 F.3d at 93.

None of the "exceptional circumstances" warranting dismissal in favor of a foreign insolvency proceeding are presented in this matter and all the case law cited by Defendants is readily distinguishable.  Even if Defendants could set forth compelling circumstances, the extreme prejudice Defendants would suffer precludes the granting of Defendants' Motion.  Dismissal of the claims against Defendants would be entirely unfair and unduly prejudicial to Plaintiffs and deprive them of any avenue for relief of their claims in any forum whatsoever – claims which have been timely and properly brought before this Court by US entities for violation of US federal law for conduct occurring with the US.  "Ensuring the ability of the parties to fully and fairly litigate their claims in some tribunal surely is a paramount goal of international abstention principles."  Turner Entertainment Co. v. Degeto Film GmbH, 25 F.3d 1512, 1522 (11th Cir. 1994) (citing Hilton v. Guyot, 159 U.S. 113, 205 (1895)).  "Before accepting or relinquishing jurisdiction a federal court must be satisfied that its decision will not result in prejudice to the party opposing the stay."  Id.  Because it is undisputed that Plaintiffs have no avenue for relief in Canada, Defendants' Motion must be denied.

Clearly, Defendants intent with their Motion is not to dismiss this case for the collection and adjudication of all claims before one tribunal – the standard articulated by all the case law relied upon be Defendants – but rather is merely a strategic move to avoid any claims by Plaintiffs altogether, a result entirely inconsistent with the very purpose of adjudicatory comity abstention. Any prejudice from the alleged inefficiencies of the restructuring process resulting from the filing of this action should be borne by Defendants – not the Plaintiffs.   Defendants are the parties who are seeking to divest over $500 Million worth of stock from US shareholders, are accused of committing securities fraud and who failed to file stay or recognition proceedings of the CCAA Proceeding in the US – the mechanism specifically designed to prevent the alleged inefficiencies and prejudice Defendants claim.

## II.    STATEMENT OF FACTS

1.      This is a federal securities action to recover compensable damages caused by Defendants' intentional and unlawful conduct occurring within the US in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.      Plaintiffs are US investors who purchased shares of Banro on the New York Stock Exchange ("NYSE").  The Fund is a Boston-based private equity investment fund, investing in growth equities and gold mining stocks throughout the world.   Lepard is a United States citizen, asset manager and professional investor with over 40 years investment experience.  Lepard holds a Masters in Business Administration from the Harvard School of Business and serves as the asset manager of the Fund.  First Amended Complaint (the "Compl.") ¶¶ 9-10.

3.      Defendant Banro is a Canadian mining company operating exclusively in the Democratic Republic of the Congo (the "DRC"), with a focus on the exploration, development

and production of gold.  The DRC is reported to have the 10th highest gold reserves in the world. Although operating in the DRC, the Company is headquartered in Canada, where 60 percent of all the world's mining companies are located and that generate an estimated $50 Billion a year for Canada.  Banro's securities traded on the NYSE under the ticker symbol "BAA", before its delisting for cause on or about January 10, 2018.

4.      Defendant Clarke is a resident of the United Kingdom ("UK") and the former Chief Executive Officer ("CEO") of Banro.  Declaration of Lawrence Lepard (the "Lepard Dec.") ¶ 3. Shortly after the filing of this action in March of 2018, Clarke was terminated as CEO of Banro and appears to be no longer employed by Banro. Id.

5.      The allegations in the First Amended Complaint (the "Complaint"), all stem from the intentional and fraudulent actions of Clarke directed at Plaintiffs.

6.      As alleged in the Complaint, Defendant Clarke intentionally and maliciously made false statements directly to Plaintiffs in order to induce them hold and purchase additional shares in Banro, for his benefit.  As set forth in the Complaint:

60.      At the annual Denver Gold Forum conference held in Colorado Springs September 18-21, 2016, Clarke met with Plaintiffs, and assured them the operational environment at Twangiza and Namoya was stable and operating without interference.

61.      Specifically, on or about September 20, 2016, Clarke met with Plaintiff Lepard and discussed the current operational conditions in the DRC. At the time, Lepard and his Fund were collectively one of the largest common shareholders in Banro, owning 14,645,577 shares of common stock (representing 5.8% of the outstanding common stock), valued at $4.6 Million.

62.      Lepard specifically inquired as to the operational conditions at Twangiza and Namoya. Despite having contemporaneous knowledge of the recent attack, knowledge of the grievances claimed by the local populations, as well as the violent protest and loss of control of the Namoya mine in January of 2016, Clarke made no mention of the same and misrepresented the operational environment to Lepard as stable.

63.      Plaintiffs relied on Clarke's misrepresentation and omissions in continuing to hold their stock, as well as purchasing additional shares.

Compl. ¶¶ 60-63.

7.      As a whole, the common shareholders of Banro were lured into a $580 Million investment in the eastern Congo in reliance upon Banro's promise of establishing a sustainable and stable operating environment through close ties with local communities.  When the risks of Banro's failure to win over the local population materialized, Clarke took affirmative action to misrepresent and conceal the truth.  As a consequence, Banro's common shareholders continued to hold their stock at an artificially inflated price.

8.      On or about December 24, 2017, Banro filed its petition for restructuring in the Canadian CCAA Proceeding, seeking to extinguish all common shares of Banro (the majority of which were sold to US shareholders through the NYSE), as part of a corporate take-over by the creditor group, Black Rock and Gramercy.  Lepard Dec. ¶ 4.

9.      Despite the enormous relief sought by Banro against US shareholders in the CCAA Proceeding, Banro never filed for any recognition of the CCAA Proceedings in the US.  At the time of the filing of this action, the proposed restructuring plan submitted in the CCAA Proceeding made no mention of Plaintiffs or their claims, and despite Defendants disingenuous statement to the contrary, Plaintiffs have never participated in, nor ever filed a claim in the CCAA Proceeding – a court which has no personal jurisdiction over the Plaintiffs.  Id. at ¶ 5.

10.     Although never participating in the CCAA Proceeding, Lepard did communicate a grievance regarding the valuation of Banro in connection with the CCAA Proceeding by correspondence sent directly to the Ontario Superior Court of Justice dated December 23, 2017 (the "December Letter").  Id. at ¶ 6.

11.     In response to the December Letter, both Banro and the court Monitor responded in writing stating that Lepard's correspondence with the court was improper and that if Plaintiffs

wished to participate in the CCAA Proceeding, they would need to retain Canadian counsel and properly appear in the proceeding, which Plaintiffs never did.  Id. at ¶ 7.

12.     In late February of 2018, Plaintiffs learned from their contacts in the DRC the facts which serve as the basis for the Complaint.  Id. at ¶ 8.  Specifically, Plaintiffs uncovered the gross misrepresentations of the operational environment in the DRC which Clarke intentionally concealed and misrepresented, which gave rise to the claims asserted in this action.  Id.

13.     On March 6, 2018, Plaintiffs commenced this action and provided the Monitor written notice of the action, in haste, as a courtesy to the court in the CCAA Proceeding.

14.     In response to the filing of this action, on March 13, 2018 Defendants filed a motion in the CCAA Proceeding specifically to extinguish the claims asserted in this Litigation.  Id. at ¶ 10.  Plaintiffs informed Defendants in writing on March 23, 2018 that they contested jurisdiction in Canada.  Id. at ¶ 11. Plaintiffs nonetheless proceeded with their motion and, on March 27, 2018, obtained an order purporting to extinguish all claims in this Litigation (the "Order").  Id.  Within a two-week time frame, the Court in the CCAA Proceeding – without any service upon Plaintiffs or appearance in the litigation – forever barred any claim by Plaintiffs from adjudication.

15.     Consequently, the only forum now available to Plaintiffs for relief on their claims is in this action.

16.     On May 18, 2018, Defendants filed the instant Motion, seeking dismissal of all claims asserted herein.

### III.     LEGAL STANDARD

In resolving a motion to dismiss under Rule 12(b)(1) "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006).  "The decision to grant comity is a matter

within a court's discretion and the burden of proof to establish its appropriateness is on the moving party." Duff & Phelps, LLC v. Vitro S.A.B. de C.V., 18 F. Supp. 3d 375, 382 (S.D.N.Y. 2014) (quoting Maersk, Inc. v. Neewra, Inc., 2010 U.S. Dist. LEXIS 69863, at *29 (S.D.N.Y. July 9, 2010)).   "When considering a motion to abstain, a 'court is not restricted to the face of the pleadings, but may review affidavits and other evidence to resolve factual disputes concerning its jurisdiction to hear the action.'" Madoff II, 2016 Bankr. LEXIS 4067, at *33 (quoting Kingsway Fin. Servs. v. Pricewaterhouse-Coopers LLP, 420 F. Supp. 2d 228, 233 n.5 (S.D.N.Y. 2005)).

## IV.   ARGUMENT

### A.  This Action was Properly Filed in this Court

As a foundation for their Motion, Defendants posit that Plaintiffs have unlawfully sought relief for their claims in this Court in violation of a stay order issued by the CCAA Proceeding. Consequently, Defendants seek to preclude Plaintiffs from pursuing their claims in any forum whatsoever – US or Canada – asserting that Plaintiffs' failure to comply with the stay order and claims process is fatal to their ability to obtain relief anywhere.  Indeed, Defendants' entire Motion reads as if the CCAA Proceeding has personal jurisdiction over the Plaintiffs and that Defendants had obtained recognition of their stay order or CCAA Proceeding in the US.  Neither of which are true.

Defendants' position is easily dispelled by the undisputable fact that the stay order does not apply to Plaintiffs, as the Canadian court does not have personal jurisdiction over the Plaintiffs. Fotochrome, Inc. v. Copal Co., 517 F.2d at 516-17 (bankruptcy court stay order does not operate against a party if court lacks personal jurisdiction over that party); Alemite Mfg. Corp. v. Staff, 42 F.2d 832, 832-33 (2d Cir. 1930) (court lacks authority to enjoin those over whom it does not have personal jurisdiction).  Indeed, this is why debtors file recognition proceedings in foreign countries

to the extent they seek to include foreign creditors which they lack personal jurisdiction over in their restructuring plans.

It is also undisputed that Plaintiffs never submitted a claim in the CCAA Proceeding which may have given the Canadian court jurisdiction over the Plaintiffs.  See In re Kasl, 2009 Bankr. LEXIS 2351, *10-12  ("a creditor who files a claim in a bankruptcy case commenced under the Bankruptcy Code … submits to the general jurisdiction of the bankruptcy court presiding over the bankruptcy case and subjects itself to that court's equitable power … [t]his applies to both domestic and foreign creditors who file claims.")  With no claim ever being submitted and having no personal jurisdiction over the Plaintiffs, the stay order does not apply to Plaintiffs who, in filing this action, have exercised their fundamental right to remedy under the First Amendment to the US Constitution for conduct occurring within the US arising under the Exchange Act.

The CCAA Proceeding is merely a restructuring proceeding with a pre-packaged Plan, which, at the time of the filing of this action, made no mention of Plaintiffs or the claims asserted in this action.  There is no liquidation proceeding and Plaintiffs are not seeking a distribution from Banro's bankruptcy estate through this Court, or any other forum.  To the extent Banro wishes to include Plaintiffs' post-petition claims in its Plan, the onus is on Banro to garner Plaintiffs' first-filed claims before the appropriate forum for inclusion in their Plan and adjudication of their claims – which is not what Defendants are seeking with their Motion.

Having established that this action was appropriately filed before the Court, which clearly has jurisdiction over the parties and the federal securities law claims asserted herein, it would seem axiomatic that this Court cannot issue a ruling divesting itself of jurisdiction knowing full well that Plaintiffs have no other avenue for relief.  Indeed, any prejudice resulting from the timing of its filing should be born by Defendants and not the Plaintiffs.  To hold otherwise would result in a

ruling that citizens of the US are subject to orders of foreign states which have no personal jurisdiction over them – for conduct occurring in the US in violation of US law.

## B. International Comity Does not Support, Much Less Require, Dismissal of this Action

International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience." Hilton, 159 U.S. at 163-64. "While the doctrine can be stated clearly in the abstract, in practice we have described its boundaries as "amorphous" and "fuzzy."" Royal & Sun Alliance Ins. Co., 466 F.3d at 93 (citing JP Morgan Chase Bank, 412 F.3d 418, 423 (2d Cir. 2005). In addition to its imprecise application, even where the doctrine clearly applies it "is not an imperative obligation of courts but rather is a discretionary rule of 'practice, convenience, and expediency.'" Id. (quoting Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru, 109 F.3d 850, 854 (2d Cir. 1997)).

"The Supreme Court has recognized that a decision to abstain from exercising jurisdiction based on the existence of parallel litigation 'does not rest on a mechanical checklist, but on a careful balancing of the important factors . . . as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Royal & Sun Alliance Ins. Co. of Can., 466 F.3d at 94. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." Colorado River, 424 U.S. at 818-19 (citing Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936)).

### i.     There is no Parallel Proceeding or Claim Presented in the CCAA Proceeding

Defendants assert that "[t]he Second Circuit has long recognized '"foreign bankruptcy proceedings" as a '"discrete category of foreign litigation that generally *requires* the dismissal of

parallel district court actions."' Br. at 12. (citing <u>Royal & Sun Alliance Ins. Co. of Canada</u>, 466 F. at 92-93. But Defendants completely ignore the key phrase in the Second Circuit authority they cite: "parallel district court actions." The action before the Court is not "parallel" to the proceedings in Canada. The Second Circuit has made clear that "[f]or two actions to be considered parallel, the parties in the actions need not be the same, but they must be substantially the same, litigating substantially the same issues in both actions. <u>Id</u>.; <u>Schneider Nat'l Carriers, Inc. v. Carr</u>, 903 F.2d 1154, 1156 (7th Cir. 1990) ("Suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora."). There is no claim by Plaintiffs against either Banro or Clarke in the CCAA Proceeding. Moreover, neither Clarke nor the Plaintiffs are even a party to the CCAA Proceeding.

As further grounds for their Motion, Defendants submit authority from the Second Circuit stating that "U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding." Br. at 12. Again, Defendants ignore the fact that there <u>is no creditor claim by Plaintiffs in the Canadian proceeding</u>. This action is the first and only filed claim against Defendants for the conduct alleged in the Complaint.

Defendants have also failed to establish Plaintiffs' claims are even subject to the CCAA Proceeding. First, Defendants can hardly argue the claims asserted herein are subject to a proceeding which – in response to this action – they sought and obtained an order precluding Plaintiffs from asserting their claims in. Second, the claims against Clarke are direct and independent of the proceedings in Canada. The claims against Clarke arise out of his conduct occurring within the US specifically directed at the Plaintiffs, not merely as a result of his former association with Banro. Clarke is resident of the United Kingdom and no longer even employed

by Banro.  As a result, Clarke has woefully failed to carry his burden of establishing how Plaintiffs claims against him are subject to Banro's restructuring proceeding.

Even if he could, Clarke cannot establish how dismissal of this case meets with the principles of equity and fairness underlying adjudicatory comity abstention – as Plaintiffs have no avenue for relief against him outside of this action.  In this light, Defendants' statement that the circumstance "*requires*" dismissal is misleading and contrary to binding Second Circuit authority. The "amorphous" doctrine of international comity "is not an imperative obligation to courts but rather is a rule of 'practice, convenience, and expediency.'" JP Morgan Chase Bank, 412 F.3d at 423 (quoting Pravin Banker Assocs., Ltd., 109 F.3d at 854).  "While a defendant's international comity defense should be assessed from the 'legal sense,' a court must not lose sight of the broader principles underlying the doctrine. On the other hand, even where the comity doctrine clearly applies, it 'is not an imperative obligation of courts, but rather is a discretionary rule of practice, convenience, and expediency.'" Royal and Sun Alliance Ins. Co. of Canada, 466 F.3d at 92. (citation and quotation marks omitted).

Third, the claims against Defendants arose post-petition and the pre-packaged Plan made no mention of foreign post-petition creditors being precluded from pursuing claims against Defendants in foreign courts.  Indeed, the Second Circuit has refused to dismiss actions in favor of foreign insolvency proceedings under such circumstances. See Int'l Ass'n of Machinists & Aero. Workers v. Varig, S.A., 302 Fed. Appx. 10 (2nd Cir. 2008).

Because there is no parallel proceeding, Defendants' analysis and case law regarding the assessment of public policy and procedural fairness of the parallel proceeding is entirely irrelevant and Defendants' Motion can readily be denied.  However, even if there was a parallel proceeding in Canada, Defendants fail to carry their burden of presenting justification for dismissal.

### ii.    Defendants have Failed to Establish Exceptional Circumstances

Even if the CCAA Proceeding did constitute a parallel proceeding - it does not - the Second Circuit has made abundantly clear that the mere existence of a foreign proceeding "by itself, does not justify the dismissal of a case on grounds of international comity abstention." Royal & Sun Alliance Ins. Co., 466 F.3d at 93.  In support of their Motion, Defendants cite to a string of Second Circuit cases which found exceptional circumstances warranting dismissal in favor parallel foreign insolvency proceedings in circumstances entirely inapposite to the facts of this case.

Defendants grossly mischaracterize the case upon which they principally rely, as well as the facts of this case, to lure this Court into granting them a discharge of Plaintiffs' claims. Defendants' submit that the Second Circuit in Allstate "found that dismissal of U.S. securities claims in deference to an Australian restructuring proceeding" was warranted under "nearly identical circumstances."  Plaintiffs' Brief ("Br.") at 2.  First, even a cursory review of Allstate reveals that it did not involve a restructuring proceeding but a liquidation proceeding.  Indeed, the entire analysis of the case, including the seven (7) factors of procedural fairness relied upon by the court, focused exclusively on the fairness of the liquidation procedures for the debtors' bankruptcy estate.   In finding procedural fairness of the liquidation proceedings, the court specifically conditioned its ruling on the fact that there was "no indication that appellants would be prejudiced if they are required to maintain their actions in Australia."  Indeed, the appellants had already filed a pending securities action in Australia.  The court further held that the moving party had established procedural fairness because appellants had "attended all scheduled meetings and court hearings … have filed two actions in the Australian courts."  The facts of the instant case could not be more dissimilar.  Indeed, Plaintiffs never participated in the CCAA Proceeding whatsoever, and the dismissal of this action would result in extreme prejudice.

Defendants' also make a conclusory and unsupported argument that somehow the dismissal of this case would serve "the equitable and orderly distribution of a debtors property."  Nothing could be further from the truth.  Rather, dismissal would only serve Defendants' goal of extinguishing and evading Plaintiffs' claims altogether – not the distribution of Banro's property. Moreover, there is no distribution of the debtor's property to occur in this case.  Not only has the CCAA Proceeding already been completed, but the proceeding was merely a restructuring proceeding and not a liquidation proceeding where assets get disbursed.  See In re Kingate Mgmt. Ltd. Litig., 2016 U.S. Dist. LEXIS 129882, *119 (S.D.N.Y. 2016) (denying motion to dismiss on intentional comity grounds because "it is not clear that the normal justification for deferring to foreign bankruptcy proceedings, to allow equitable and orderly distribution of a debtor's property, would apply under these circumstances.")

### iii.    Plaintiffs will Suffer Extreme Prejudice if the Motion is Granted

Even if Defendants could meet their burden of proof, the prejudice Plaintiffs would sustain is fatal to Defendants' Motion.  "Ensuring the ability of the parties to fully and fairly litigate their claims in some tribunal surely is a paramount goal of international abstention principles."  Turner Entertainment Co., 25 F.3d at 1522 (citing Hilton, 159 U.S. at 205).  "Before accepting or relinquishing jurisdiction a federal court must be satisfied that its decision will not result in prejudice to the party opposing the stay."  Id.

Dismissal of the claims against Defendants would be entirely unfair and unduly prejudicial to Plaintiffs because it would deprive them of any avenue for relief of their claims in any forum whatsoever – claims which have been timely and properly brought before this Court by US entities for violation of US federal law for conduct occurring within the US.

Federal courts have specifically addressed the importance of having a <u>present avenue for relief</u> in connection with dismissal on international comity abstention grounds.   In finding dismissal in favor of a proceeding in Germany was appropriate on international comity grounds, the Eleventh Circuit held:

> In the instant case, we see nothing that has occurred in the German proceedings to indicate that staying the litigation will foreclose any chance for Turner to obtain a fair and just result. For example, nothing has occurred in the German proceedings to date to dispel the expectation that Turner will have ample opportunity to fairly present to the German trial court at the next stage of the proceedings its evidence regarding the value of the ASTRA broadcasts in the areas outside the licensed territory defined in Paragraph 4 of the Agreement.

<u>Turner Entertainment Co. v. Degeto Film GmbH</u>, 25 F.3d 1512, 1522 (11th Cir. 1994).

Not only is it undisputed that Plaintiffs have no avenue for relief in Canada, but it is also undisputed the reason Plaintiffs are now barred from relief is Defendants' actions in response to the filing of this action.   At the time of the filing of this action, Banro's restructuring plan made no mention of Plaintiffs or their claims.   It would seem axiomatic that Defendants cannot use actions it took against Plaintiffs in Canada <u>after the filing of this action</u> as grounds for justifying the dismissal of Plaintiffs' claims in this action – claims which were properly brought before this Court.   In addition, at the time of the filing of this action, Plaintiffs had never submitted a claim nor participated in the CCAA Proceeding whatsoever, and Banro's proposed restructuring plan made no mention of Plaintiffs or foreign claims.   Thus, the Plaintiffs (both US entities) were well within their right to file an action in a US Court for Defendants violation of US federal securities laws.   Under such circumstances, it cannot even be suggested that Plaintiffs were "forum shopping" of attempting to end-run anything.

### iv.     Claims Against Defendant Clarke Cannot be Dismissed

Even if the Court were compelled to dismiss the claims against Banro, there are a litany of compelling reasons the claims against Clarke cannot also be dismissed.   As a non-party to the

CCAA Proceeding, it is abundantly clear that there is no parallel proceeding in Canada for the claims asserted in this action against Clarke.  Consequently, Clarke does not argue he is a party to a parallel action, but rather argues that Banro's insolvency proceeding constitutes a parallel proceeding to which he is "closely intertwined" and the failure to dismiss him would "interfere with the implementation" of Banro's restructuring.  However, Clarke presents absolutely <u>no evidence whatsoever</u> in support of his factual conclusions and mischaracterizes case law in a feeble attempt to invite this Court to make an illogical ruling.

As a threshold matter, and as set forth above, there is no parallel proceeding regarding this action in the CCAA Proceeding against Banro.  Clarke cannot ride the coattails of a parallel action that does not exist.  Even if such a parallel action did exist, Clarke has not made any showing – much less met his burden of proof – upon which this Court could find he is "closely intertwined" with Banro's restructuring or that a judgement in this case would "interfere with the implementation" of Banro's restructuring.

Ironically, the only evidence presented in support of his assertion of being "inextricably intertwined" with the restructuring of Banro comes from the Complaint.   Br. at 20-21.  Clarke argues that because the allegations in the Complaint of statements he allegedly made were on behalf of the Company, and the alleged damages flow from the declining stock price, he is therefore "closely intertwined" with Banro's restructuring such that any judgement against him would "interfere" with the implementation of Banro's restructuring.   Clarke's argument is nonsensical and insufficient to find any relationship between the restructuring of Banro and Clarke.

In a bold attempt to end-run this deficiency, Clarke suggests that without his release of liability the "Plan would not have garnered the overwhelming support it did from the essential

parties in interest."   Clarke provides absolutely no factual support for such a bold assertion, and the Court should not allow such a self-serving hollow allegation to serve as any basis for its ruling.

Not only does Clarke fail to provide any factual support for his Motion, but his reliance on the decisions in <u>Oui Financing</u> and <u>Allstate</u> is equally misplaced.  In <u>Oui Financing</u>, the court found that a <u>current</u> president of the debtor had <u>obligations</u> that were "clearly closely intertwined" with the debtor and, as a result, a judgment against the president would "very likely interfere" with the restructuring.  Here, there is absolutely no factual basis upon which the Court could make such a finding.  Clearly, Clarke's mere <u>former</u> status of CEO does not equate to him necessarily being closely intertwined with Banro's restructuring.  Indeed, his relevancy to the restructuring also seems to be dispelled by the fact that he was terminated during the restructuring proceedings by Banro shortly after the filing of this action in March of 2018.

The decision in <u>Oui Financing</u> is further dissimilar because the court specifically found that there was "minimal 'prejudice'" because the subject plan provided for repayment of its loan (i.e. they had recourse in the foreign jurisdiction) and the plaintiffs had affirmatively participated in the foreign proceeding.  Neither of which is true here.

The disparity of the claims against Clarke and Banro's restructuring are further demonstrated by the fact that the claims against Clarke are direct and wholly independent of his former employment with Banro.   Indeed, securities fraud is well outside the scope of his employment or role as CEO and Banro is not necessarily liable for his acts.  The Second Circuit has held that a corporate officer who commits or participates in a tort, even if in the course of corporate duties, will be held individually liable.  <u>Lopresti v. Terwilliger</u>, 126 F.3d 34, 42 (2d Cir. 1997); <u>People v. Apple Health and Sports Club, Ltd., Inc.</u>, 613 N.Y.S.2d 868, 870 (1st Dep't 1994)(corporate officer who participates in commission of tort may be held individually

responsible regardless of whether or not he acted on behalf of corporation and in course of his corporate duties) Belinzoni v. Seland, 512.N.Y.2d 846,847 (2d Dep't 1987)(corporate officer liable if he knowingly participated in the wrong, or in the case of fraud, had knowledge of the misrepresentation).

Clarke's reliance on Allstate is equally unavailing.  As a threshold matter, the decision in Allstate provides no factual details or support for its conclusion that failing to grant comity to the officers in that case would defeat the purpose of granting comity to the debtor.  Even if it did, no such finding could be made under the facts of this case.  Not granting comity to Clarke, a former employee, would have absolutely no impact on Banro whatsoever.  And Clarke has set forth no facts to the contrary to meet his burden of proof.

In addition, not only does the Court overseeing Banro's CCAA Proceeding in Canada lack jurisdiction over direct claims by Plaintiffs against Defendant Clarke, Plaintiffs' allegations against Defendant Clarke involve fraud upon the Plaintiffs occurring in the US, not Canada and not the UK.  Logic and reason (and the law) dictate that Defendant Clarke cannot incite international comity to dismiss the claims against him in favor of litigation in Canada – a forum were none of the parties reside, the conduct did not occur and law is not at issue.  As a former employee and UK citizen, with no connection to any proceedings in Canada, there is no basis to dismiss any claims against Defendant Clarke.

     **v.**     **The Balance of Equity Weighs in Favor of Plaintiffs**

Even if Defendants could meet their high burden, the Court is not obligated to grant their motion.  The "amorphous" doctrine of international comity "is not an imperative obligation to courts but rather is a rule of 'practice, convenience, and expediency.'"  JP Morgan Chase Bank, 412 F.3d at 423 (quoting Pravin Banker Assocs., 109 F.3d at 854)).

"The task of a district court evaluating a request for dismissal based on a parallel foreign proceeding is not to articulate a justification *for* the exercise of jurisdiction, but rather to determine whether exceptional circumstances exist that justify the surrender of that jurisdiction." Royal & Sun Alliance, 466 F.3d at 93. The district court, however, does not search for such exceptional circumstances through a "mechanical checklist" of factors, but rather through a "careful balancing" in which "[n]o one factor is necessarily determinative." Id. at 94 (citations omitted). Those factors include (1) similarity of the parties and issues, (2) interests of judicial economy, (3) the order in which the actions were filed, (4) adequacy of the alternative forum, and (5) general considerations of fairness and prejudice to the parties. See id. at 94. C.D.S., Inc. v. Zetler, 198 F. Supp. 3d 323, 331 (S.D.N.Y. 2016) (citing Royal & Sun All. Ins. Co. of Canada, 466 F.3d at 94). "The abstention decision rests on a careful balancing of the important factors . . . as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Kitaru Innovations Inc. v. Chandaria, 698 F. Supp. 2d 386, 390 (S.D.N.Y. 2010).

In furtherance of their desperate attempt to re-cast the equities of this case, Defendants disingenuously assert Plaintiffs have previously participated in the CCAA Proceeding and "sat idle" on their claims.   However, there is no evidence before the Court upon which such a finding could be made.  Plaintiffs did not discover the facts which gave rise to their claims until the eve of the filing, and immediately filed the action in this Court without delay and prior to the claims deadline in the CCAA proceeding as a courtesy to the Canadian court.

In addition, no evidence of any purported participation in the CCAA Proceedings by Plaintiffs has been presented in Defendants' Motion.  The December Letter sent by Plaintiffs to the court in the CCAA Proceeding can hardly be characterized as "participation" when in response to the letter the Monitor and Banro each wrote to Plaintiffs, contending the correspondence was

improper and advising Plaintiffs they would have to engage Canadian counsel to appear in the action.

Plaintiffs (both US entities) were well within their right to file an action in a US Court for Defendants' violation of US federal securities laws.  Under such circumstances, it cannot even be suggested that Plaintiffs were "forum shopping" or attempting to end-run anything.

Finally, Defendants' lengthy argument regarding Chapter 15 of the Bankruptcy Code entirely misses the point.  Banro could have, and likely should have, filed proceedings in the US to have their CCAA Proceedings recognized in the US.  Its reasons for doing so were compelling. The exclusive purpose of the CCAA Proceeding was to divest over $500 Million worth of stock from US shareholders.  Despite this fact, Banro failed to file any stay or bankruptcy recognition proceedings in the US – the mechanism specifically designed to prevent the alleged inefficiencies and prejudice Defendants claim.

Having established that 1) Plaintiffs did not violate a stay order; 2) never participated in the CCAA Proceeding; 3) did not sit idle on their claims; and 4) properly filed this action in a court with subject matter jurisdiction over their federal securities law claims, it is axiomatic that the equities weigh in favor of denying Defendants' Motion.  This Motion is not a request by the court Monitor in Canada to allow the claims asserted herein to be adjudicated in Canada, but rather is merely an audacious request by the debtor itself and its former CEO to have Plaintiffs' claims extinguished altogether.  Defendants' Motion should readily be denied.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion, and grant such other and further relief as the Court deems just and proper.

Dated: July 3, 2018

Respectfully submitted,

**KALBERER LLP**

By: /s/ *Kurt T. Kalberer II*
Kurt T. Kalberer II, Esq.
7 World Trade Center
250 Greenwich Street, 46th Floor
New York, NY 10007
Tel: (212) 266-0044
E-Mail: kkalberer@kalbererlaw.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Kurt T. Kalberer II, hereby certify that on July 3, 2018, I caused a true and correct copy of the foregoing Plaintiffs' Corrected Memorandum of Law in Opposition to Defendants' Motion to Dismiss to be served upon counsel for Defendants via US mail.

/s/ *Kurt T. Kalberer II*