**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
EMA GARP FUND and LAWRENCE LEPARD,
individually and on Behalf of all Others
Similarly Situated,

                                                 :     No. 18-cv-01986

                  Plaintiffs,

                                               :

        -against-

                                               :

BANRO CORPORATION and JOHN CLARKE,

                                               :

                  Defendants.
-------------------------------------------------------------X

### REPLY IN SUPPORT OF THE MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OF DEFENDANTS BANRO CORPORATION AND JOHN CLARKE

AKIN GUMP STRAUSS HAUER & FELD LLP

Stephen M. Baldini
Ira S. Dizengoff
Sara L. Brauner
Stephanie Lindemuth
One Bryant Park
New York, NY 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
sbaldini@akingump.com
idizengoff@akingump.com
sbrauner@akingump.com
slindemuth@akingump.com

*Attorneys for Defendants Banro Corporation and John Clarke*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES....................................................................................................... i

ARGUMENT............................................................................................................................2

    I.      PLAINTIFFS' CLAIMS AGAINST BANRO SHOULD BE DISMISSED ...........2

          A.     Plaintiffs Rely On General Abstention Principles Rather Than The
Specific Principles Applicable In Cases Involving Foreign
Bankruptcy Proceedings ...............................................................................2

          B.     Plaintiffs Offer No Persuasive Reason To Depart From Precedent
Holding That Their Claims Should Be Dismissed.......................................4

    II.     PLAINTIFFS' CLAIMS AGAINST CLARKE SHOULD BE
DISMISSED ........................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Life Ins. Co. v. Linter Grp. Ltd.*,
    994 F.2d 996 (2d Cir. 1993).................................................................. *passim*

*In re Atlas Shipping A/A*,
    404 B.R. 726 (S.D.N.Y. 2009).....................................................................6

*In re Bd. of Dirs. of Tele. Arg., S.A.*,
    528 F.3d 162 (2d Cir. 2008)..................................................................5, 7, 8

*In re Bogdanovich*,
    292 F.3d 104 (2d Cir. 2002)........................................................................7

*Cunard Steamship Co., Ltd. v. Salen Reefer Servs. A.B.*,
    773 F.2d 452 (2d Cir. 1985)......................................................................4, 6

*Fotochrome, Inc. v. Copal Co. Ltd.*,
    517 F.2d 512 (2d Cir. 1975)........................................................................6

*Int'l Ass'n of Machinists & Aerospace Workers v. Varig, S.A.*,
    302 F. App'x 10 (2d Cir. 2008) ...................................................................6

*J.P. Morgan Chase Bank v. Altos Hornos de Mexico*,
    412 F.3d 418 (2d Cir. 2005)......................................................................3, 7

*Kao v. British Airways, PLC*,
    No. 17 Civ. 0232 (LGS), 2018 WL 501609 (S.D.N.Y. Jan. 19, 2018)....................................3

*In re Kingate Mgmt. Ltd. Litig.*,
    No. 09-CV-5386 (DAB), 2016 WL 5339538 (S.D.N.Y. Sept. 21, 2016) ...........................3, 4

*In re Metcalfe & Mansfield Alt. Invs.*,
    421 B.R. 685 (S.D.N.Y 2010)......................................................................7

*Newfoundland & Labrador v. AbitibiBowater Inc.*,
    [2012] 3 S.C.R. 443 (Can. SC, Dec. 7, 2012)..........................................................7

*Oui Fin. LLC v. Dellar*,
    No. 12 Civ. 7744(RA), 2013 WL 5568732 (S.D.N.Y. Oct. 9, 2013) .............................1, 9, 10

*In re Refco Sec. Litig.*,
    No. 07-md-1902 (JSR), 2010 WL 11475742 (S.D.N.Y Mar. 2, 2010) ..................................3

*Royal & Sun All. Ins. of Can. v. Century Int'l Arms., Inc.*,
    466 F.3d 88 (2d Cir. 2006)...................................................................................................1, 2, 3

*Turner Entm't. Co. v. Degeto Film GmbH*,
    25 F.3d 1512 (11th Cir. 1994) ...........................................................................................8

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*,
    825 F.2d 709 (2d Cir. 1987)...........................................................................................1, 4, 5, 8

**Statutes**

11 U.S.C. § 1141(d)(1) ...............................................................................................................7

Companies' Creditors Arrangement Act, RSC 1985, ch. C-36, § 121 ...........................................6

Securities Exchange Act of 1934 ................................................................................................9

**Other Authorities**

FED. R. CIV. P. 44.1.......................................................................................................................3

Three basic arguments emerge from Plaintiffs' scattershot opposition to Defendants' Motion, all of which share a common flaw: A failure to account for the unique circumstances of bankruptcy.[1]  To start, Plaintiffs argue that abstention on comity grounds requires a showing of exceptional circumstances.   But Plaintiffs urge this Court to follow precedent on foreign abstention generally, rather than cases involving "foreign bankruptcy proceedings"—a "discrete category of foreign litigation that [ordinarily] requires the dismissal of parallel district court actions." *Royal & Sun All. Ins. of Can. v. Century Int'l Arms., Inc.*, 466 F.3d 88, 92-93 (2d Cir. 2006).   As the Second Circuit has repeatedly recognized, when an entity is undergoing bankruptcy in a foreign jurisdiction, deference to the interest of the foreign state overseeing that process trumps general abstention principles. *See id.* at 95.

Next, Plaintiffs argue that their strategic refusal to participate in the Banro CCAA Proceedings counsels against dismissal.   Once again, Plaintiffs fundamentally misunderstand the law.  If Plaintiffs' position were correct, any creditor could simply sit on the sidelines of a foreign bankruptcy, wait until the debtor entity emerged from restructuring, and then pursue his claims in U.S. courts unconstrained by the prioritization of debts all other creditors were obligated to follow.   That result runs headlong into "[t]he rationale underlying [extending comity to bankruptcy proceedings, which] is that '[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding.'" *Oui Fin. LLC v. Dellar*, No. 12 Civ. 7744(RA), 2013 WL 5568732 at *4 (S.D.N.Y. Oct. 9, 2013) (quoting *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713-14 (2d Cir. 1987)).

Finally, Plaintiffs urge this Court to allow their claims against the individual defendant, John Clarke, to proceed even if it dismisses the claims against Banro.  But Plaintiffs' claims

---

[1] Capitalized terms used and not otherwise defined shall have the meanings ascribed to such terms in the *Memorandum of Law in Support of Motion to Dismiss the First Amended Complaint of Defendants Banro Corporation and John Clarke*, dated May 18, 2018 (the "Mot.") [ECF No. 29].

against Clarke are inextricably intertwined with the Banro CCAA Proceedings.  In accordance with Canadian law, the Banro Debtors expressly called for any and all claims against present and former directors and officers, including Clarke, to be filed in those proceedings.  Accordingly, those who voted on the Plan understood that such claims would be addressed before the company emerged from restructuring.  Permitting Plaintiffs to pursue their claims in this Court would upend that common understanding and undermine the recently adopted Plan, thereby defeating the purpose of extending comity to Banro's CCAA Proceedings in the first place.  For that reason, Plaintiffs' claims against Clarke should be dismissed as well.

## ARGUMENT

I.   **PLAINTIFFS' CLAIMS AGAINST BANRO SHOULD BE DISMISSED**

   A.   **Plaintiffs Rely On General Abstention Principles Rather Than The Specific Principles Applicable In Cases Involving Foreign Bankruptcy Proceedings**

   Citing *Royal & Sun*, 466 F.3d at 93, Plaintiffs contend that Banro and Clarke "fail to even articulate the controlling legal standard" for the relief they seek.  Opp'n at 5.  But even a cursory review of *Royal & Sun* reveals that it is Plaintiffs who misstate the law.  There, the Second Circuit considered whether an action for damages claimed under an insurance policy should be dismissed in deference to a proceeding against an affiliated entity in Canada.  466 F.3d at 90. Critically, the defendant in *Royal & Sun* was not undergoing bankruptcy proceedings—a fact the Court noted in its analysis.  *Id.* at 93.  Although observing that abstention normally requires "the clearest of justifications," the Court excepted "one discrete category of foreign litigation" from the general rule: "foreign bankruptcy proceedings."  *Id.*  The pendency of such proceedings, the Court explained, typically "requires the dismissal of parallel district court actions . . . because [a] foreign nation's interest in the equitable and orderly distribution of a debtor's property is an interest deserving of particular respect and deference."  *Id*. (quotation marks omitted).

2

In light of that interest, the Second Circuit has held that "deference to the foreign court is appropriate so long as the foreign proceedings are procedurally fair and . . . do not contravene the laws or public policy of the United States." *J.P. Morgan Chase Bank v. Altos Hornos de Mexico*, 412 F.3d 418, 424 (2d Cir. 2005). As Banro and Clarke described in their motion, dismissal in deference to the Banro CCAA Proceedings meets both the "procedural fairness" and "public policy" prongs of this test. *See* Mot. at 13-18. Plaintiffs do not dispute either point, *cf.* Opp'n at 17 (arguing only that "assessment of public policy and procedural fairness . . . is entirely irrelevant"), and have accordingly forfeited any contrary argument, *see Kao v. British Airways, PLC*, No. 17 Civ. 0232 (LGS), 2018 WL 501609, at *5 (S.D.N.Y. Jan. 19, 2018) ("[F]ailure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver of that issue.").[2]

Plaintiffs' contention that Defendants fail to show the "exceptional circumstances" necessary to warrant dismissal simply ignores the Second Circuit's long-held view that cases involving foreign bankruptcies are a special category for which deference is normally appropriate. *See Royal & Sun*, 466 F.3d at 95 (recognizing "a foreign nation's interest in uniform bankruptcy proceedings" as an "additional circumstance[]" that "outweigh[s] the district court's general obligation to exercise its jurisdiction"). The only other case Plaintiffs cite, *In re Kingate Mgmt. Ltd. Litig.*, No. 09-CV-5386 (DAB), 2016 WL 5339538, at *35 (Sept. 21, S.D.N.Y. 2016), does not help them. *Kingate* noted that "under Second Circuit law, foreign bankruptcy proceedings are generally given extra deference." *Id.* The court declined to extend deference because the entity going through bankruptcy was not the defendant, and thus the "normal justification for deferring to foreign bankruptcy proceedings, to allow equitable and orderly

---

[2] Plaintiffs also neither challenge Defendants' declaration of Jane Dietrich describing Canadian bankruptcy law submitted under Federal Rule of Civil Procedure 44.1, nor submit a foreign law declaration of their own. The Dietrich Declaration thus stands unrebutted. *See, e.g., In re Refco Sec. Litig.*, No. 07-md-1902 (JSR), 2010 WL 11475742, at * 25 (S.D.N.Y Mar. 2, 2010) (accepting defendant's expert's unrebutted conclusions of foreign law).

distribution of a debtor's property," might not apply.  *Id.*  By contrast, where, as here, plaintiffs

seek to hold the debtor itself liable to suit, "the normal justification" for deference applies in full.

### B.    Plaintiffs Offer No Persuasive Reason To Depart From Precedent Holding That Their Claims Should Be Dismissed

Plaintiffs advance a hodgepodge of arguments in their attempt to convince this Court to

ignore decades of Second Circuit precedent establishing that dismissal is appropriate.  All are

variations on a common theme:  Because Plaintiffs did not participate in the Banro CCAA

Proceedings and have lost any avenue for relief, their claims cannot be dismissed.  No matter

how many times and ways this argument is made, it does not withstand scrutiny.

*First*, Plaintiffs complain that this Court cannot defer to the Banro CCAA Proceedings

because they are not "parallel" to this litigation insofar as Plaintiffs were never formally made

parties in Canada.  As an initial matter, Plaintiffs point to no case involving foreign bankruptcy

proceedings in which the court required parity of parties and issues as a condition of extending

comity, and the Second Circuit's foundational cases involving foreign bankruptcies do not even

mention such a requirement.  *See Allstate Life Ins. Co. v. Linter Grp. Ltd*., 994 F.2d 996 (2d Cir.

1993); *Victrix*, 825 F.2d 709; *Cunard Steamship Co., Ltd. v. Salen Reefer Servs. A.B.*, 773 F.2d

452 (2d Cir. 1985).  But more to the point, the Banro CCAA Proceedings plainly were "parallel,"

in that they were a forum in which Plaintiffs *could have and should have* pursued their claims.

As described in the unrebutted Dietrich Declaration, the Banro Debtors obtained a Claims

Procedure Order, which called for claims against Banro and its directors and officers to be filed

in the CCAA Proceedings.  Dietrich Dec. ¶¶ 59-64.  Although Plaintiffs allege that they were

unaware of the facts giving rise to this lawsuit "until the eve of the filing," Opp'n at 24, their

complaint was filed on March 5, 2018—the day *before* the Bar Date, [ECF. No. 1]; Dietrich Dec.

¶ 59.  If that were not enough to show that Plaintiffs had ample opportunity to participate in the

4

CCAA Proceedings, upon receiving notice of the complaint, the Banro Debtors voluntarily rescheduled the hearing to sanction the Plan in order to afford Plaintiffs the opportunity to review it and submit any objections to the Canadian Court.  *Id.* ¶ 80.

Given that Plaintiffs could have and should have sought relief from the Canadian Court (thus becoming "parties" to the CCAA Proceedings), their failure to do so cannot serve as a basis for ignoring precedent holding that their claims should be dismissed.  Indeed, if the strategic choice not to participate in a foreign bankruptcy proceeding were sufficient to avoid application of longstanding comity principles, the exception would swallow the rule:  Creditors would simply wait out a foreign bankruptcy—where their claims risked being compromised in some fashion—in favor of pursuing complete relief in U.S. courts after the bankruptcy concluded. Second Circuit law does not permit such maneuvers.  *See Victrix*, 825 F.2d at 714 (refusing to "aid [plaintiff's] effort to evade the writ of the Swedish bankruptcy court"); *In re Bd. of Dirs. of Tele. Arg., S.A.*, 528 F.3d 162, 175 (2d Cir. 2008) ("[Plaintiff's] challenge to the [restructuring Plan] in the United States after refusing to participate even by objection in the Argentine proceedings and after [the Plan closed], is contrary to our longstanding recognition that foreign courts have an interest in conducting insolvency proceedings concerning their own domestic business entities and that creditors of an insolvent foreign corporation may be required to assert their claims against a foreign bankrupt before a duly convened bankruptcy tribunal.").

*Second*, citing no Canadian law, Plaintiffs contend that their ability to file this case was unaffected by the Stay of Proceedings because the Canadian Court lacked personal jurisdiction over them.  *See* Opp'n 13.  Even if true, it is beside the point: Whether or not the Canadian Court maintained personal jurisdiction over Plaintiffs such that it could have enjoined them from filing suit has nothing to do with this Court's authority to dismiss their claims on comity grounds.

Indeed, the Second Circuit has squarely rejected Plaintiffs' argument, holding that although a foreign court may not be able to "render a binding money judgment against a person over whom it possesses no jurisdiction[] based solely on that person's dealings with a foreign corporation[,] . . . creditors of an insolvent foreign corporation may be required to assert their claims against a foreign bankrupt before a duly convened foreign bankruptcy tribunal." *Cunard*, 773 F.2d at 458-59; *see also In re Atlas Shipping A/A*, 404 B.R. 726, 736 (S.D.N.Y. 2009) (rejecting claim that *Fotochrome, Inc. v. Copal Co. Ltd.*, 517 F.2d 512 (2d Cir. 1975), supports "declining to give comity to [a foreign] proceeding" because "[i]t did not involve . . . the granting of comity").[3]

*Third*, Plaintiffs contend that, because the Plan did not explicitly mention their claims before the complaint was filed, they cannot be extinguished now. Plaintiffs ignore the fact that, as pre-petition "equity claims," their claims against Banro were extinguished under the Plan from the start. *See* Dietrich Dec. ¶ 65.[4] Although the Sanction Order was revised for clarity once Banro received notice of the specific allegations in this case, the Plan always extinguished equity claims like those asserted here. And as just noted, Plaintiffs had the opportunity to review the Plan and submit claims and objections in the Banro CCAA Proceedings (both prior to and after the Bar Date), in the face of a specific admonition that the Sanction Order would terminate their claims. *Id.* ¶ 80; Ex. 26. Plaintiffs' failure to object to the Plan or appear at the sanction hearing, and the Canadian Court's subsequent decision to extinguish *all* of their claims—including those against Clarke, which were "barred because of non-compliance with the Claims Procedure Order," *see* Ex. 18 ¶ 11(g)—do not undermine the grounds for dismissal. Nor does Circuit precedent suggest otherwise. *Cf. Int'l Ass'n of Machinists & Aerospace Workers v. Varig, S.A.*,

---

[3] To the extent Plaintiffs argue that a chapter 15 petition is necessary because the Canadian Court lacked jurisdiction (Opp'n 13-14), their argument fails for the reasons explained in Defendants' Motion. Mot. at 21-24.

[4] Plaintiffs repeatedly describe their claims as "post-petition," Opp'n 14, 17, but they arise from events predating Banro's CCAA filing and are thus properly classified as "pre-petition" under Canadian (and U.S.) law. *See* Companies' Creditors Arrangement Act, RSC 1985, ch. C-36, § 121.

302 F. App'x 10, at *2 (2d Cir. 2008) (no abuse of discretion in rejecting comity where plan did *not* bar post-petition claims in foreign courts and injunction granted at debtor's request explicitly permitted post-petition creditors to assert their rights in U.S. courts).

*Fourth*, Plaintiffs argue that the fact that Banro underwent a restructuring rather than a liquidation renders decades of Second Circuit precedent inapposite. But there is no relevant difference between a liquidation and a restructuring—both are avenues for an indebted entity to wind up its affairs, and both require an organized and equitable assignment of assets under either U.S. or Canadian law. Indeed, it is a fundamental tenet of both U.S. and Canadian bankruptcy law that a restructuring of this sort allows a bankrupt company to emerge from the proceeding with a new start, unburdened by liabilities incurred by the debtor entity. *Compare* 11 U.S.C. § 1141(d)(1), *and In re Bogdanovich*, 292 F.3d 104, 107 (2d Cir. 2002) ("Congress made it a central purpose of the bankruptcy code to give debtors a fresh start in life . . . unburdened by the existence of old debts."), *with Newfoundland & Labrador v. AbitibiBowater Inc.*, [2012] 3 S.C.R. 443 (Can. SC, Dec. 7, 2012), at [47] (recognizing "debtor's need to make a fresh start" as guiding principle in CCAA). Consistent with that aim, both cash and equity were distributed to creditors and claims against Banro were dismissed as they would have been in a liquidation. *See* Ex. 17 Schedule 17 A ¶¶ 6.2, 6.3. Hence, permitting claims to proceed that should have been resolved in bankruptcy has the same effect on a restructuring as it does on a liquidation—which is why courts extend comity equally to foreign liquidations and restructurings. *See, e.g.*, *Bd. of Dirs. of Tele. Arg.*, 528 F.3d at 175 (extending comity to Argentine restructuring); *J.P. Morgan Chase*, 412 F.3d at 421 (extending comity to Mexican restructuring); *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685 (S.D.N.Y 2010) (extending comity to CCAA restructuring).[5]

---

[5] Contrary to Plaintiffs' assertion, *Allstate* did not turn on the fact that the defendant underwent a liquidation rather than a restructuring. Nor do the *Allstate* "fairness" factors depend on that detail; rather, they look

*Fifth*, Plaintiffs contend that they will suffer "prejudice" (Opp'n at 18) if their claims are dismissed because they may no longer pursue them in Canada. As should be clear by now, the situation in which Plaintiffs find themselves is entirely of their own making. Having chosen not to participate in the CCAA Proceedings despite invitations to do so and warnings that their claims would be extinguished, they cannot now complain that they have no recourse. *See Bd. of Dirs. of Tele. Arg.*, 528 F.3d at 175 ("Every person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts.") (internal quotation omitted).

Notably, Plaintiffs cite no Second Circuit precedent to support their argument that dismissal on comity grounds requires a present avenue for relief. Opp'n at 20. The out-of-circuit authority on which they rely arises outside the bankruptcy context and is therefore inapposite. *See Turner Entm't. Co. v. Degeto Film GmbH*, 25 F.3d 1512 (11th Cir. 1994) (dispute over licensing agreement). But even if Plaintiffs were correct that the inability to pursue claims abroad could weigh against extending comity in some cases, this is not one of them. Plaintiffs refused multiple opportunities to seek relief in the Banro CCAA Proceedings. Accordingly, there is no equitable basis to allow them to pursue their claims in this Court to the detriment of creditors who properly submitted to the jurisdiction of the Canadian Court. *See Victrix*, 825 F.2d at 714 ("Any distribution of [the debtor's] limited assets is likely to affect other creditors . . . who obeyed the Swedish court's stay and sought relief only in the bankruptcy proceeding.").

## II.   PLAINTIFFS' CLAIMS AGAINST CLARKE SHOULD BE DISMISSED

Like their other arguments, Plaintiffs' contention that this Court should allow their

---

to whether the foreign jurisdiction follows basic due process norms, such as ensuring that creditors are given notice and an opportunity to be heard, and are treated equally within classes and regardless of citizenship. *See* Mot. 14-16 (citing *Allstate*, 994 F.2d at 999). Regardless, Plaintiffs identify *no* aspect of the Banro CCAA Proceedings that was procedurally unfair, instead relying on only their own failure to engage in the proceedings. Opp'n at 18. That self-inflicted harm in no way indicates any unfairness with the Banro CCAA Proceedings themselves.

claims against Clarke to proceed is predicated on a mistaken view of the facts and the law.  The Second Circuit has affirmed the dismissal on comity grounds of claims against "officers and directors [of a bankrupt entity] alleging violations of . . . the Securities Exchange Act of 1934," *Allstate*, 994 F.2d at 998—the precise claims at issue here.  The Court found that allowing those claims to proceed notwithstanding dismissal of the corporate defendant "would defeat the purpose of granting comity in the first place."  *Id.* at 1000.  Citing *Allstate*, the court in *Oui Financing* also dismissed a claim against an individual defendant where "[p]ermitting Plaintiff to obtain a judgment against him . . . would very likely interfere with the implementation of the recently-adopted [restructuring] plan."  2013 WL 5568732, at *11.

Under these precedents, Plaintiffs' claims against Clarke should be dismissed.  As one of Banro's directors and officers, the Claims Procedure Order set out procedures for filing claims against him, Dietrich Dec. ¶¶ 53, 60, 61, and the Plan and the Sanction Order endorsing it included provisions releasing such claims, subject to specific exceptions provided in accordance with Canadian law, *id.* ¶ 68.  As Banro and Clarke described (Mot. at 21), these releases were required under the terms of the Support Agreement Banro reached with its primary creditors and were an integral part of the Plan.  *Id.*; Ex. 18 ¶ 11(f) (Canadian court explaining that releases were "critical components of the decision-making process for the Directors', Officers' and Requisite Consenting Parties' participation in the CCAA Proceedings and support for the Plan" and without them "[the Banro Debtors] would not have brought forward the Plan and the Requisite Consenting Parties would not have supported [it]").  In light of the releases, the common understanding of those who voted on the Plan was that Banro and its directors and officers would emerge from restructuring unburdened by liabilities incurred before the CCAA Proceedings commenced.  Advancement of this action would undercut that understanding and

disrupt the Plan, thereby defeating the purpose of extending comity in the first place.  *See Allstate*, 994 F.3d at 999-1000.

Plaintiffs offer no persuasive rejoinder.  Regarding *Allstate*, Plaintiffs announce (without support) that it does not apply because declining to extend comity to Clarke would not impact Banro.  Opp'n at 23.  That is incorrect for the reasons noted:  Banro emerged from restructuring unburdened by liabilities that predated its bankruptcy, including any liabilities allegedly incurred by its directors and officers.  Permitting these claims to proceed would upset the settled understanding of those who voted on the Plan, in contravention of established bankruptcy law.

Plaintiffs' effort to distinguish *Oui Financing* fares no better.  Plaintiffs focus on the fact that the defendant in that case was the *current* president of the debtor entity, while Clarke is a *former* CEO.  But that fact is irrelevant.  Plaintiffs' claims concern Clarke's conduct while he was Banro's CEO and accordingly should have been resolved in the CCAA Proceedings.  As the court explained in *Oui Financing* (and as is equally true here), preventing late-filed claims from undermining the newly adopted plan is why the law provides for a stay against certain individuals *as well as* the debtor entity and why, once the Plan is approved, "creditors may not seek redress against [those individuals] outside the [P]lan's terms."  2013 WL 5568732, at *11.

Plaintiffs' last-ditch argument that their claims against Clarke should advance because corporate officers may be held liable for individual torts (Opp'n at 22) gets them no further.  Leaving aside that *none* of the cases Plaintiffs cite concerns the federal securities laws, whether or not individual liability would attach if Plaintiffs' claims had merit is immaterial.  As just described, the relevant question under *Allstate* and its progeny is whether allowing these claims to proceed would undermine the recently adopted Plan, thereby defeating the purpose of granting comity to Banro's restructuring.  The answer to that question is clearly "yes."

Respectfully submitted,

/s/Stephen M. Baldini
Stephen M. Baldini
Ira S. Dizengoff
Sara L. Brauner
Stephanie Lindemuth
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY  10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
sbaldini@akingump.com
idizengoff@akingump.com
sbrauner@akingump.com
slindemuth@akingump.com

*Attorneys for Defendants Banro Corporation and John Clarke*