UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                              :
EMA GARP FUND and LAWRENCE LEPARD,            :
*Individually and on Behalf of All Others*    :
*Similarly Situated*,                         :
                                              :
                          Plaintiffs,         :     18 Civ. 1986 (KPF)
                                              :
                   v.                         :     **OPINION AND ORDER**
                                              :
BANRO CORPORATION and JOHN A. CLARKE,         :
                                              :
                          Defendants.         :
                                              :
------------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

The complaint in this case alleges false and misleading statements, as well as material omissions of fact, in communications from Banro Corporation, Inc. ("Banro," or the "Company"), and its former CEO, John A. Clarke, to Banro's shareholders. Plaintiffs, who are Banro shareholders, seek compensatory damages for violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Banro has recently undergone a restructuring proceeding in the Canadian court system, and Defendants have moved to dismiss this action based on that proceeding. For the reasons set forth in the remainder of this Opinion, Defendants' motion to dismiss Plaintiffs' claims on the grounds of international comity is granted.

# BACKGROUND[1]

## A. The Banro CCAA Proceeding

Banro is a public corporation headquartered in Canada and incorporated under Canadian law. (FAC ¶ 7). On December 22, 2017, Banro commenced a reorganization proceeding (the "Banro CCAA Proceeding") in the Ontario Superior Court of Justice pursuant to Canada's Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (the "CCAA"). (Dietrich Decl. ¶¶ 2, 44). The Court pauses to provide background information on CCAA proceedings generally, after which it will return to the details of the Banro CCAA Proceeding.

During a CCAA proceeding, the CCAA court appoints a licensed insolvency trustee as a monitor (the "Monitor"), to act with fiduciary duties to all stakeholders. (Dietrich Decl. ¶ 15). The debtor company's management team and board of directors generally remain in place, and the board retains power to approve the disposition of assets, or the restructuring of the company, subject to oversight by the Monitor. (*Id.* at ¶ 9). The CCAA court has the power to grant a stay of proceedings in favor of the debtor for an initial period of 30 days, and subsequently to extend the stay on a showing that the debtor

---

[1] The facts set forth herein are drawn from Plaintiffs' First Amended Complaint (the "FAC" (Dkt. #13)), and as well a declaration submitted by Jane Dietrich in support of Defendants' motion to dismiss ("Dietrich Decl." (Dkt. #31)), which declaration provides information about Banro's Canadian bankruptcy proceeding. The Court takes judicial notice of the contents of the Dietrich declaration pursuant to Federal Rule of Civil Procedure 44.1. *See* Fed. R. Civ. P. 44.1; *see also, e.g., Oui Fin. LLC* v. *Dellar*, No. 12 Civ. 7744 (RA), 2013 WL 5568732, at *1-2 (S.D.N.Y. Oct. 9, 2013). For convenience, the Court will refer to Defendants' memorandum in support of their motion to dismiss as "Def. Br." (Dkt. #29), Plaintiffs' memorandum in opposition as "Pl. Opp." (Dkt. #36), and Defendants' reply as "Reply Br." (Dkt. #37).

has acted diligently and in good faith. (*Id.* at ¶ 12). The Monitor is required to publish notice of the proceedings in the Canadian newspapers, to send notice to every known creditor, and to make certain information about the proceeding publicly available on a website devoted to the case. (*Id.* at ¶¶ 16, 19). The Monitor also makes publicly available information about the debtor's state of business and financial affairs, as well as the Monitor's advice on the reasonableness and fairness of any proposed restructuring, the latter of which the Canadian courts refer to as a plan of "compromise" or "arrangement." (*Id.* at ¶ 29). CCAA proceedings also have an established "E-Service Protocol" to effect service of documents on interested stakeholders. (*Id.* at ¶ 20). Typically, the CCAA court will issue a claims procedure order providing that creditors with claims against either the debtor, or its directors and officers, must file proof of claims by a specified date (the "Bar Date"), or the potential claims may be extinguished. (*Id.* at ¶ 23). The CCAA court will then hold a creditor meeting where the plan of compromise or arrangement must be approved by a vote, whereupon it may be approved, or "sanctioned," by the court. (*Id.* at ¶ 30).

CCAA proceedings have particular rules for equity claims. "[C]reditors having equity claims are to be in the same class of creditors in relation to those claims unless the court orders otherwise and may not, as members of that class, vote at any meeting unless the court orders otherwise." CCAA § 22.1. Under the CCAA, an "equity claim means a claim that is in respect of an equity interest, including a claim for, among others … a monetary loss resulting from

the ownership, purchase or sale of an equity interest or from the rescission, or, in Quebec, the annulment, of a purchase or sale of an equity interest[.]" *Id.* § 2(1). No plan may be sanctioned by the CCAA court if it provides for the payment of *any* equity claims before all non-equity claims are paid in full. *See id.* § 6(8). Shareholder claims are equity claims, even where based on allegations of fraudulent misrepresentation. (Dietrich Decl., Ex. 9).

CCAA proceedings also explicitly provide for claims against the individual directors of the debtor company. *See* CCAA § 5.1(1) ("A compromise or arrangement made in respect of a debtor company may include in its terms provision for the compromise of claims against directors of the company that arose before the commencement of proceedings under this Act and that relate to the obligations of the company where the directors are by law liable in their capacity as directors for the payment of such obligations."). Finally, CCAA proceedings provide mechanisms for appeal. (Dietrich Decl. ¶ 38).

Returning to the specifics of the Banro CCAA Proceeding, on December 22, 2017, the CCAA court issued an initial order staying all claims. (Dietrich Decl. ¶¶ 44, 45). The stay was ultimately extended until May 3, 2018. (*Id.* at ¶ 45). Meanwhile, the CCAA court issued a Bar Date deadline of March 6, 2018, for the filing of any claims against Banro. (*Id.* at ¶ 59). No claims were received from Plaintiffs (or any others) by the March 6, 2018 Bar Date. (*Id.* at ¶ 63). The CCAA court then considered a proposed reorganization plan that, among other things, exchanged secured debt for equity and extinguished the interests of Banro's current equity holders. (*Id.* at ¶ 65). The

reorganization plan also provided releases for both the Banro debtors and their directors and officers. (*Id.* at ¶ 67). The Banro debtors held two meetings of creditors, at which the creditors overwhelmingly approved the proposed reorganization plan. (*Id.* at ¶ 55). The CCAA court then issued a sanction order (the "Sanction Order") approving the reorganization plan on March 27, 2018, specifically finding that the releases provided for the Banro directors and officers were fair and reasonable. (*Id.* at ¶¶ 57, 68).

**B.     Plaintiffs' Awareness of the Banro CCAA Proceeding**

Plaintiffs concede that they were aware of the CCAA Proceeding. (Def. Br. 9; FAC ¶ 99). However, rather than participate in that proceeding, they commenced this action by filing a complaint on March 5, 2018, one day prior to the Bar Date deadline. (Dkt. #1). Plaintiffs maintain that they "did not discover the facts which gave rise to their claims until the eve of the filing, and immediately filed the action in this Court without delay and prior to the claims deadline in the CCAA proceeding as a <u>courtesy</u> to the Canadian court." (Pl. Opp. 24 (underscoring in original)). Defendants reply that, at the time Plaintiffs commenced this action on March 5, 2018, there was still time to participate in the CCAA Proceeding. (Def. Reply 4).

The record bears out Defendants' position. On March 6, 2018, Plaintiffs' counsel informed the Banro Monitor that Plaintiffs had commenced the present action in this Court. (Dietrich Decl. ¶ 77, Ex. 23). Banro's bankruptcy counsel then told Plaintiffs' counsel that a hearing on the reorganization plan pending before the CCAA court had been rescheduled for March 27, 2018, providing

5

Plaintiffs an additional opportunity to participate in the Banro CCAA Proceeding. (*Id.* at ¶ 80, Ex. 26). Nonetheless, Plaintiffs did not appear in the CCAA Proceeding. (*Id.* at ¶ 83). Plaintiffs assert that both the Banro Monitor and Banro wrote to tell Plaintiffs that their letter dated March 6, 2018, was "improper and advis[ed] Plaintiffs they would have to engage Canadian counsel to appear in the action." (Pl. Opp. 25; *see also* Dietrich Decl. ¶ 77, Ex. 26).

On March 27, 2018, the CCAA court issued the Sanction Order, which released all equity claims, including Plaintiffs' claims. (Dietrich Decl. ¶¶ 57, 84-85). Specifically, the CCAA court extinguished Plaintiffs' claims against Banro as pre-petition equity claims, and extinguished Plaintiffs' claims against Clarke as "barred ... because of non-compliance with the Claims Procedure Order." (*Id.* at Ex. 18 ¶ 11(g); Def. Reply 6). On May 3, 2018, the CCAA court terminated the stay. (Dietrich Decl. ¶¶ 45, 58).

### C. The Instant Motion

On May 18, 2018, Defendants moved to dismiss this action on the basis of comity. (Dkt. #28). Plaintiffs filed their opposition on July 8, 2018 (Dkt. #36), and Defendants replied on July 16, 2018 (Dkt. #37).

## DISCUSSION

### A. Applicable Law

#### 1. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

In considering a Rule 12(b)(1) motion to dismiss, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Natural Res. Def. Council* v. *Johnson*, 461 F.3d 164, 171 (2d

6

Cir. 2006). The Court "may consider affidavits and other materials beyond the pleadings to resolve [a] jurisdictional issue[.]" *J.S. ex rel. N.S.* v. *Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004); *see also Kramer* v. *Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (observing that "courts routinely take judicial notice of documents filed in other courts"); *Lefkowitz* v. *Bank of N.Y.*, 676 F. Supp. 2d 229, 249 (S.D.N.Y. 2009) ("Judicial notice may encompass the status of other lawsuits, including in other courts, and the substance of papers filed in those actions."). Sister courts in this District have considered discretionary motions to dismiss on international comity grounds under Rule 12(b)(1). *See, e.g.*, *Duff & Phelps, LLC* v. *Vitro S.A.B. de C.V.*, 18 F. Supp. 3d 375, 377 (S.D.N.Y. 2014); *United States* v. *Portrait of Wally*, No. 99 Civ. 9940 (MBM), 2002 WL 553532, at *6 (S.D.N.Y. Apr. 12, 2002).

### 2. Deference to International Bankruptcy Proceedings

International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton* v. *Guyot*, 159 U.S. 113, 164 (1895). In *Allstate Life Insurance Company* v. *Linger Group Limited*, the Second Circuit affirmed the dismissal, on international comity grounds, of two actions for violations of the U.S. federal securities laws. 994 F.2d 996, 998 (2d Cir. 1993). In its opinion, the Second Circuit also provided guidance for district courts in determining when such dismissals are proper.

7

To start, the party seeking dismissal bears the burden of proving that comity is appropriate. 994 F.2d at 999. The *Allstate* Court observed that "comity is particularly appropriate where, as here, the court is confronted with foreign bankruptcy proceedings." *Id.* (internal citation and quotation marks omitted). Courts considering whether a foreign bankruptcy proceeding warrants comity should first undertake a multi-factor analysis to determine whether the foreign court satisfies fundamental standards of procedural fairness. *See id.* If it does, courts should then determine whether affording comity would "violate any laws or public policies of the United States." *Id.* at 1000. Where "the granting of comity to a Foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion, comity has long been recognized as appropriate." *Id.* (internal citation and quotation marks omitted).

Of course, discretionary dismissal on grounds of international comity has its limits, which are especially clear in contexts other than foreign bankruptcy proceedings. For example, in *Royal & Sun Alliance Insurance Company of Canada* v. *Century International Arms, Inc.*, the Second Circuit vacated the dismissal of an action on international comity grounds where the foreign proceeding at issue was not a bankruptcy proceeding, and where it concerned a different (though affiliated) defendant. 466 F.3d 88, 91, 94-95 (2d Cir. 2006). The Second Circuit explained that comity abstention "is not an imperative obligation of courts but rather is [] discretionary," and the "mere existence of

8

parallel foreign proceedings does not negate the district courts' 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" *Id.* at 92 (quoting *Colorado River Water Conservation Dist.* v. *United States*, 424 U.S. 800, 817 (1976)). In that same opinion, however, the Second Circuit

> recognized one discrete category of foreign litigation that generally requires the dismissal of parallel district court actions — foreign bankruptcy proceedings. A foreign nation's interest in the equitable and orderly distribution of a debtor's property is an interest deserving of particular respect and deference, and accordingly we have followed the general practice of American courts and regularly deferred to such actions.

*Id.* at 92-93 (internal citation and quotation marks omitted); *see also JP Morgan Chase Bank* v. *Altos Hornos de Mex., S.A. de CV*, 412 F.3d 418, 424 (2d Cir. 2005) ("[The Second Circuit has] repeatedly held that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding.... In such cases, deference to the foreign court is appropriate so long as the foreign proceedings are procedurally fair and ... do not contravene the laws or public policy of the United States."); *Victrix S.S. Co., S.A.* v. *Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987) ("American courts have long recognized the particular need to extend comity to foreign bankruptcy proceedings.").

**B.     Analysis**

   **1.     The Court Dismisses Plaintiffs' Claims Against Banro**

Defendants argue that the Court should dismiss this action, on the grounds of international comity, because it was filed during the Banro CCAA Proceeding. (Def. Br. 1-2). The Court agrees. Applying the standard that the

9

Second Circuit first articulated in *Allstate*, and later reaffirmed in *Royal & Sun Alliance* and *JP Morgan Chase*, the Court begins by considering whether the Banro CCAA Proceeding satisfied fundamental standards of procedural fairness.

### a. The Banro CCAA Proceeding Satisfied Fundamental Standards of Procedural Fairness

The Second Circuit has instructed courts considering deference to international bankruptcy proceedings to assess "several factors as indicia of procedural fairness," including:

> (1) [W]hether creditors of the same class are treated equally in the distribution of assets; (2) whether the liquidators are considered fiduciaries and are held accountable to the court; (3) whether creditors have the right to submit claims which, if denied, can be submitted to a bankruptcy court for adjudication; (4) whether the liquidators are required to give notice to the debtors' potential claimants; (5) whether there are provisions for creditors' meetings; (6) whether a foreign country's insolvency laws favor its own citizens; (7) whether all assets are marshalled before one body for centralized distribution; and (8) whether there are provisions for an automatic stay and for the lifting of such stays to facilitate the centralization of claims.

*Allstate*, 994 F.2d at 999.

Defendants argue that the Banro CCAA Proceeding satisfied fundamental standards of procedural fairness because it "treat[ed] creditors equally within separate classes; provide[d] for a Monitor, satisfying the fiduciary requirement; permit[ted] creditors to submit claims and appeal denials of those claims; provide[d] for creditors' meetings; and provide[d] a court-imposed stay[,]" as well as provided notice to the public of the proceedings. (Def. Br. 14-15;

Dietrich Decl. ¶¶ 8-40). Further, Defendants contend that the Banro CCAA Proceeding was fair as to Plaintiffs specifically because "Plaintiffs had ample knowledge of: (i) the ongoing nature of the CCAA Proceedings; (ii) the stay imposed by the Canadian Court; (iii) the claims and Plan objection procedures available to them; and (iv) the hearing on the Sanction Order, which was to address the extinguishment of their claims." (Def. Br. 15 (citing Dietrich Decl. ¶¶ 74, 81)). The Court agrees with Defendants that, for these reasons, the Banro CCAA Proceeding satisfied fundamental standards of procedural fairness.

Plaintiffs' piecemeal approach to rebutting this determination is not persuasive. To start, Plaintiffs assert that "no parallel proceeding exists *at present* and that Plaintiffs' claim cannot and will not be adjudicated on the merits in any Canadian proceeding." (Pl. Opp. 6 (emphasis added)). Relying on the fact that the Canadian restructuring plan did not mention Plaintiffs or their claims until after this action was commenced, Plaintiffs conclude that the Sanction Order extinguishing Plaintiffs' claims resulted entirely from steps taken by Defendants after this action had been filed. (*Id.* at 7, 20). In Plaintiffs' estimation, Defendants' motion effectively seeks "the recognition of the Sanction Order they obtained in response to this action extinguishing Plaintiffs' claims." (*Id.* at 8).

In contrast, Defendants insist — correctly — that the Banro CCAA Proceeding was a parallel proceeding because it was "a forum in which Plaintiffs *could have and should have* pursued their claims." (Def. Reply 4).

11

"[T]he Banro Debtors obtained a Claims Procedure Order, which called for claims against Banro and its directors and officers to be filed in the CCAA Proceedings." (*Id.* (citing Dietrich Decl. ¶¶ 59-64)). The fact that Plaintiffs chose not to participate does not alter this conclusion, as complete parity of parties and issues is not a required condition of extending comity. *See, e.g.*, *Allstate*, 994 F.2d at 999; *Royal & Sun Alliance*, 466 F.3d at 94 ("For two actions to be considered parallel, the parties in the actions need not be the same, but they must be substantially the same, litigating substantially the same issues in both actions"). Defendants also contest Plaintiffs' assertion that the Sanction Order's bar of Plaintiffs' claims arose from steps taken by Defendants after the commencement of this action. As Defendants point out, Plaintiffs' claims are pre-petition because they "arise from events predating Banro's CCAA filing." (Def. Reply 6 n.4). And "as pre-petition 'equity claims,' [Plaintiffs'] claims against Banro were extinguished under the Plan from the start." (*Id.* at 6). Therefore, the Banro CCAA Proceeding was a parallel proceeding that extinguished Plaintiffs' claims independent of any conduct taken by Defendants after the filing of this action.

Plaintiffs' next challenge fares no better. Plaintiffs argue that the stay issued in the Banro CCAA Proceeding did not apply to them because, as they never filed a claim in that proceeding, the Canadian court lacked personal jurisdiction over them. (Pl. Opp. 7, 13-14). Plaintiffs note as well that Defendants "failed to file stay or recognition proceedings of the CCAA Proceeding in the US[.]" (*Id.* at 9, 25). Defendants respond, and the Court

12

agrees, that the Canadian court's lack of personal jurisdiction over Plaintiffs is irrelevant to this Court's comity determination. (Def. Reply 5). So too is the fact that Defendants did not file a recognition proceeding in U.S. court. *See, e.g., Allstate*, 994 F.2d at 999; *Victrix*, 825 F.2d at 714. Defendants were under no obligation to file anything in U.S. courts in order to earn for the Canadian courts "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation." *Hilton*, 159 U.S. at 164.

Nor is the Court persuaded by Plaintiffs' argument that dismissal would cause them undue prejudice because "it would deprive them of any avenue for relief of their claims in any forum whatsoever." (Pl. Opp. 19). Plaintiffs assert that the reason they are barred from seeking relief in Canada "is Defendants' actions in response to the filing of this action." (*Id.* at 20). On that basis, Plaintiffs conclude that the balance of equities favors this Court's exercise of jurisdiction over their claims. (*Id.* at 24).

Plaintiffs' argument as to prejudice is curious. As Defendants point out, it was Plaintiffs' choice not to participate in the Banro CCAA Proceeding. (Def. Reply 8). The final hearing on the Sanction Order was even adjourned in order to provide Plaintiffs with additional time to review and object to the reorganization plan, which they declined to do. (Def. Br. 15). Moreover, the equities favor Defendants because Plaintiffs have, in effect, engaged in forum-shopping by electing to file an action in this Court in lieu of filing a claim in the Banro CCAA Proceeding. The Court is not convinced by Plaintiffs' response

13

that they had a right to file this action in a U.S. court, and thus any preference as to forum should not be deemed an attempt "to end-run anything." (Pl. Opp. 20). Plaintiffs had ample opportunity to litigate their claims in the Banro CCAA Proceeding fully and fairly, and cannot now claim prejudice resulting from their own choice not to do so.

Finally, Plaintiffs misstate the standard in this Circuit for courts considering international comity extension in regard to foreign bankruptcy proceedings. Plaintiffs contend that no "'exceptional circumstances' warranting dismissal in favor of a foreign insolvency proceeding are presented in this matter[.]" (Pl. Opp. 8). But the "exceptional circumstances" standard applies when courts consider extending comity to foreign proceedings *other than* foreign bankruptcy proceedings. *See, e.g.*, *Royal & Sun Alliance*, 466 F.3d at 93-94. Here, the *Allstate* factors apply, which, as stated above, favor dismissal.

The Court is comforted in its analysis by the fact that prior courts in this Circuit have also found that CCAA proceedings satisfy fundamental standards of procedural fairness. *See, e.g.*, *In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685, 698-99 (Bankr. S.D.N.Y. 2010); *E&L Consulting, Ltd.* v. *Doman Indus. Ltd.*, 360 F. Supp. 2d 465, 470 (E.D.N.Y. 2005); *Tradewell, Inc.* v. *Am. Sensors Elecs., Inc.*, No. 96 Civ. 2474 (DAB), 1997 WL 423075, at *4 (S.D.N.Y. July 29, 1997). "Canada is 'a sister common law jurisdiction with procedures akin to our own,' and thus there need be no concern over the adequacy of the procedural safeguards of Canadian proceedings." *Cornfield* v. *Investors*

*Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (quoting *Clarkson Co., Ltd.* v. *Shaheen*, 544 F.2d 624, 630 (2d Cir. 1976)).

The Court finds that the Banro CCAA Proceeding satisfied fundamental standards of procedural fairness.

### b. Dismissal of the Action Would Not Violate U.S. Law or Public Policy

"American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities." *Allstate*, 994 F.2d at 999 (internal citation and quotation marks omitted). Defendants argue that doing so here would not contravene U.S. law or public policy. The Court agrees. As Defendants rightly assert, "deference to foreign proceedings is necessary … to prevent disgruntled members of an out-of-the-money constituency from circumventing and contravening the procedures and rulings of the court overseeing the process in which all other creditors and claimants are participating." (Def. Br. 17).[2]

The fact that Plaintiffs' claims arise under U.S. securities law, as opposed to the U.S. bankruptcy code, does not alter the Court's analysis. In *DiRenzo* v. *Philip Services Corporation*, the Second Circuit found that differences between Canadian and U.S. securities law do not necessarily render Canadian courts inadequate forums. 232 F.3d 49, 58-60 (2d Cir. 2000), *vacated on other*

---

[2] Defendants analogize to the issue of enforcement of foreign judgments, which the Second Circuit has held are "unenforceable as against public policy [only] to the extent that [they are] repugnant to fundamental notions of what is decent and just in the State where enforcement is sought." *Ackermann* v. *Levine*, 788 F.2d 830, 841 (2d Cir. 1986) (internal citation and quotation marks omitted). Granting comity to the Banro CCAA Proceeding is so far from repugnant that the observation hardly merits comment.

15

*grounds*, 294 F.3d 21 (2d Cir. 2002). Here, the CCAA Proceeding provided an adequate forum for Plaintiffs to raise the claims asserted in this action.

In sum, as the Banro CCAA Proceeding was a parallel proceeding that satisfied fundamental standards of procedural fairness, and as dismissal would not violate U.S. law or public policy, the Court exercises its discretion to dismiss Plaintiffs' claims against Banro on international comity grounds.

### 2. The Court Dismisses Plaintiffs' Claims Against Clarke

Defendants argue as well for dismissal of Plaintiffs' claims against Banro's former CEO, Defendant Clarke, based on principles of international comity. (Def. Br. 20). Once again, Defendants rely on *Allstate*, in which the Second Circuit affirmed the dismissal of securities fraud claims against individual defendants, reasoning:

> [I]t would have been inefficient and inequitable to permit the individual claims to go forward. Indeed, since these individuals were sued solely because of their affiliation with the [bankrupt] companies, to allow these claims to go forward in the United States despite the dismissal as to the [bankrupt] companies would defeat the purpose of granting comity in the first place.

994 F.2d at 1000. Similarly, Defendants argue that, here, "the claims against Clarke relate to his role as CEO of Banro prior to its insolvency, and should have been resolved as part of the CCAA Proceedings," and that "allowing litigation to proceed against Clarke" would interfere with the implementation of the CCAA-sanctioned reorganization plan. (Def. Br. 21). Specifically, Defendants argue that Clarke is "closely intertwined" with the Banro restructuring because the claims against Clarke and the claims against Banro

16

both involve allegations of statements that Clarke made as Banro's CEO. (*Id.* at 20-21). Further, without the CCAA court's release of Clarke's individual liability, the CCAA reorganization plan would not have been accepted by the necessary interested parties. (*Id.* at 22).

The Court agrees with Defendants. The CCAA court established procedures for filing claims against Clarke, and the restructuring plan that was voted on, approved, and sanctioned by that court included a release of those claims. (Dietrich Decl. ¶¶ 52, 60, 61, 68). "[T]hese releases were required under the terms of the Support Agreement Banro reached with its primary creditors and were an integral part of the Plan." (Def. Reply 9). Accordingly, permitting Plaintiffs' claims against Clarke to proceed in this Court would interfere with the outcome of the Banro CCAA Proceeding and defeat the purpose of granting comity to the Canadian court.

The Court observes that the Second Circuit has previously affirmed the dismissal of fraud claims against individual defendants pursuant to a grant of international comity to a foreign bankruptcy proceeding. *See Allstate*, 994 F.2d at 1000. Moreover, in *Oui Financing LLC* v. *Dellar*, a sister court in the Southern District of New York dismissed claims against an individual non-debtor guarantor, on the basis of international comity and deference to a foreign bankruptcy proceeding, where the individual was president and shareholder of the entity undergoing restructuring, and where permitting the plaintiff "to obtain a judgment against him in this Court would very likely interfere with the implementation of the recently-adopted safeguard plan." *Oui*

17

*Financing LLC* v. *Dellar*, No. 12 Civ. 7744 (RA), 2013 WL 5568732, at *11 (S.D.N.Y. Oct. 9, 2013).³

Plaintiffs attempt, unsuccessfully, to distinguish these precedents. As to *Allstate*, Plaintiffs seek to distinguish on the basis that, here, failing to grant comity to the individual corporate officer, Clarke, would not defeat the purpose of granting comity to the corporate debtor. (Pl. Opp. 23). Plaintiffs go so far as to argue that not granting comity to Clarke "would have absolutely no impact on Banro whatsoever." (*Id.*). The Court has already rejected this conclusion, finding instead that permitting claims to proceed against Clarke in this Court would directly contravene the CCAA reorganization plan, which released those claims, and thus interfere with the purpose of granting comity in the first place. As to *Oui Financing*, Plaintiffs seek to distinguish on the basis that *Oui Financing* involved a judgment against a *current* president of the debtor, and involved the possibility of only minimal prejudice because the reorganization plan in that case included repayment of the plaintiffs' loan and the plaintiffs had "affirmatively participated in the foreign proceeding." (*Id.* at 22). In contrast, Plaintiffs point out that Clarke is a *former* CEO of Banro, and contend that they face substantial prejudice because there is no plan to compensate them and they did not affirmatively participate in the Banro CCAA Proceeding.

---

³   The French law at issue in the international proceeding to which the *Oui Financing* court deferred "operate[d] to stay actions against individual guarantors as well as the debtor itself and … [once the reorganization plan was approved,] provide[d] that creditors may not seek redress against [the individual] outside the plan's terms." *Oui Financing LLC* v. *Dellar*, No. 12 Civ. 7744 (RA), 2013 WL 5568732, at *11 (S.D.N.Y. Oct. 9, 2013). In *Oui Financing*, dismissal resulted in minimal prejudice to the plaintiff because the foreign reorganization plan "provide[d] for repayment of its loan." *Id.* at *12.

(*Id.*). Defendants reply, and the Court agrees, that Clarke's status at the time of the alleged misconduct is what matters, at which point he was the current CEO of Banro. (Def. Reply 10). Moreover, Plaintiffs cannot complain of prejudice that flows from their strategic decision not to participate in the CCAA Proceeding.

Plaintiffs argue against the dismissal of their claims against Clarke on a separate basis: They reason that because Clarke is not a party to, and did not appear in, the Banro CCAA Proceeding, "there is no parallel proceeding in Canada for the claims asserted in this action against Clarke." (Pl. Opp. 21). Plaintiffs contest Clarke's assertion that, just because their claims against Banro and Clarke arise from overlapping facts, a failure to dismiss him would "interfere with the implementation" of the CCAA reorganization plan. (*Id.*). And they argue that there is no support for the Court "to find any relationship between the restructuring of Banro and Clarke." (*Id.*). Plaintiffs also repeat their argument that the Canadian court lacked jurisdiction over their claims against Clarke, whom Plaintiffs argue is personally liable because his statements sound in fraud and "fraud is not within the scope of one's employment[.]." (*Id.* at 6). Once again, the Court is not persuaded. That the claims against Clarke sound in fraud does not alter the fact that the Banro CCAA Proceeding was the proper, procedurally fair forum for Plaintiffs' claims. And permitting the claims to proceed against Clarke in this Court would undoubtedly interfere with the implementation of the CCAA reorganization plan because that plan encompassed a release of claims against Clarke.

For the reasons above, Plaintiffs' claims against Clarke are dismissed.

## CONCLUSION

For the reasons stated in this Opinion, Defendants' motion to dismiss is GRANTED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: February 21, 2019
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge